RAILWAY OFFICIALS & EMPLOYÉS ACCIDENT ASSOCIATION
OF INDIANAPOLIS, INDIANA, V. SUSAN E. DRUMMOND.

FILED OCTOBER 5, 1898.   No. 8331.

1. Pleading: PETITION: AID BY ANSWER. A petition which is defective
   by reason of the omission of material facts therefrom will be
   aided and cured by the averment of such facts in the answer.

2. ———: ———: ACTION ON CONTRACT. Generally, a plaintiff is only
   required to bring his case within the terms appearing on the face
   of the contract in suit, and need not negative conditions and
   exceptions indorsed thereon.

3. Insurance: DEFENSE: PLEADING. Where, in an action on a con-
   tract of insurance, it is claimed that death resulted from one of
   the excepted causes enumerated on the back of the policy, it is
   for the defendant to plead and prove that fact.

4. ———: DEFINITION OF ACCIDENT. An accident, within the meaning
   of contracts of insurance against accidents, includes any event
   which takes place without the foresight or expectation of the
   person acted upon or affected thereby.

5. Accident Insurance: INJURY BY ROBBER: INSTRUCTIONS. An acci-
   dent insurance policy contained a clause insuring against injury
   "inflicted by external, violent, and accidental means" and ex-
   cepted cases where the injury results "from the intentional acts
   of the insured or any other person." Death resulted from a gun-
   shot wound inflicted by a robber. Whether the wound was acci-
   dentally or intentionally inflicted being a matter of inference
   from equivocal circumstances, the jury were properly instructed
   that the plaintiff could recover unless the shooting of the assured
   was the robber's intentional act.

ERROR from the district court of Lancaster county.
Tried below before HALL, J. *Affirmed.*

The opinion contains a statement of the case.

*Lambertson & Hall,* for plaintiff in error:

The petition having omitted to allege that the death
of the insured was due to injuries inflicted by external,
violent, and accidental means, fails to state a cause of
action. (*De Graw v. National Accident Society,* 51 Hun [N.
Y.] 142; *Newman v. Railway Officials & Employés Accident*

*Ass'n*, 42 N. E. Rep. [Ind.] 650; *Hale v. Missouri P. R. Co.*, 36 Neb. 266; *Luce v. Foster*, 42 Neb. 818; *Omaha Consolidated Vinegar Co. v. Burns*, 44 Neb. 21; *Traver v. Shaefle*, 33 Neb. 531; *Imhoff v. House*, 36 Neb. 28.)

The motion of defendant at the close of plaintiff's testimony for a nonsuit, and the request of defendant for an instruction to the jury directing a verdict for the defendant, should have been granted. (*Chicago, B. & Q. R. Co. v. Landauer*, 36 Neb. 643.)

Where a man is waylaid and shot down without warning by a foot-pad, even though the injury was unexpected, unforeseen, and unprovoked by the assured, the beneficiary cannot recover under the terms of the policy, which provides that the contract shall not cover injury or death due to the intentional act of the assured or any other person. (*Travellers Ins. Co. v. McConkey*, 127 U. S. 661; *Hutchcraft v. Travelers Ins. Co.*, 8 S. W. Rep. [Ky.] 570; *American Accident Co. v. Carson*, 30 S. W. Rep. [Ky.] 879; *Travelers Ins. Co. v. McCarthy*, 25 Pac. Rep. [Colo.] 713; *Fischer v. Travelers Ins. Co.*, 19 Pac. Rep. [Cal.] 425; *Butero v. Travelers Accident Ins. Co.*, 71 N. W. Rep. [Wis.] 811; *Johnson v. Travelers Ins. Co.*, 39 S. W. Rep. [Tex.] 972; *Standard Life & Accident Ins. Co. v. Askew*, 32 S. W. Rep. [Tex.] 31; *Phelan v. Travelers Ins. Co.*, 38 Mo. App. 640; *De Graw v. National Accident Society*, 51 Hun [N. Y.] 142; *Railway Officials & Employés Accident Ass'n v. McCabe*, 61 Ill. App. 565; *Newman v. Railway Officials & Employés Accident Ass'n*, 42 N. E. Rep. [Ind.] 650.)

There was error in instructions informing the jury that the shooting of Drummond was an accident as far as he was concerned, and which directed the jury to return a verdict for plaintiff unless they found the killing was intentional. (*United States Mutual Accident Ass'n v. Barry*, 131 U. S. 100; *Newman v. Railway Officials & Employés Accident Ass'n*, 42 N. E. Rep. [Ind.] 650.)

*Strode & Strode, contra:*

The court looks alone to the intention or design of the

person injured, and if to him the injury was unforeseen and unexpected, it is within the definition of an accident. (*Paul v. Travelers Ins. Co.*, 112 N. Y. 472; *Richards v. Travelers Ins. Co.*, 89 Cal. 170; *Ripley v. Railway Passengers Assurance Co.*, 2 Bigelow, L. & A. Ins. Cases [Mich.] 738; *American Accident Co.* of *Louisville v. Carson*, 99 Ky. 441; *Supreme Council of Order of Chosen Friends v. Garrigus*, 104 Ind. 133.)

Accident will be presumed from injury or death. (*Jones v. United States Mutual Accident Ass'n*, 61 N. W. Rep. [Ia.] 485; *Utter v. Travelers Ins. Co.*, 65 Mich. 545; *Richards v. Travelers Ins. Co.*, 89 Cal. 170; *Cronkhite v. Travelers Ins. Co.*, 75 Wis. 116; *Travellers Ins. Co. v. McConkey*, 127 U. S. 661; *Warner v. United States Mutual Accident Ass'n*, 8 Utah 435; *Robinson v. United States Mutual Accident Ass'n*, 68 Fed. Rep. 825; *Guldenkirch v. United States Mutual Accident Ass'n*, 5 N. Y. Supp. 428.)

Accident being presumed death resulting from an accident imports an external and violent agency. (*Paul v. Travelers Ins. Co.*, 112 N. Y. 479; *McGlinchey v. Fidelity & Casualty Co.*, 80 Me. 251; *Eggenberger v. Guarantee Mutual Accident Ass'n*, 41 Fed. Rep. 172; *Healey v. Mutual Accident Ass'n*, 133 Ill. 556; *Mallory v. Travelers Ins. Co.*, 47 N. Y. 52; *Tucker v. Mutual Benefit Life Co.*, 50 Hun [N. Y.] 53; *United States Mutual Accident Ass'n v. Newman*, 84 Va. 52.)

The answer cures alleged defects in plaintiff's petition. (*Haggard v. Wallen*, 6 Neb. 271.)

Plaintiff's petition is not defective in failing to charge that assured was not intentionally shot and killed by a third person. (*Cronkhite v. Travelers Ins. Co.*, 75 Wis. 116; *Anthony v. Mercantile Mutual Accident Ass'n*, 162 Mass. 354; *Meadows v. Pacific Mutual Life Ins. Co.*, 50 Am. St. Rep. [Mo.] 427; *Redman v. Ætna Ins. Co.*, 49 Wis. 435; *Farmers & Merchants Ins. Co. v. Peterson*, 47 Neb. 747; *Conboy v. Railway Officials & Employés Accident Ass'n*, 60 Am. St. Rep. [Ind.] 156; *Follis v. United States Mutual Accident Ass'n*, 58 Am. St. Rep. [Ia.] 408.)

Exceptions in insurance policies are matters of defense

to be pleaded and proved by insurer. (*Standard Life & Accident Ins. Co. v. Jones*, 94 Ala. 434; *Freeman v. Travelers Ins. Co.*, 144 Mass. 572; *Badenfield v. Massachusetts Mutual Accident Ass'n*, 154 Mass. 77; *Railway Passenger Assurance Co. v. Burwell*, 44 Ind. 460; *National Benefit Ass'n v. Bowman*, 110 Ind. 355; *Sutherland v. Standard Life & Accident Ins. Co.*, 87 Ia. 505; *Couadean v. American Accident Co.*, 95 Ky. 280; *Guldenkirch v. United States Mutual Accident Ass'n*, 5 N. Y. Supp. 428; *Dougherty v. Pacific Mutual Life Ins. Co.*, 154 Pa. St. 385; *Jones v. United States Mutual Accident Ass'n*, 61 N. W. Rep. [Ia.] 485; *Travelers Ins. Co. v. Nitterhouse*, 38 N. E. Rep. [Ind.] 110; *Home Benefit Ass'n v. Sargent*, 142 U. S. 691.)

Assured's death was due to external, violent, and accidental means. (*American Accident Co. v. Carson*, 99 Ky. 441; *Richards v. Travelers Ins. Co.*, 89 Cal. 170; *Lovelace v. Travelers Protective Ass'n*, 126 Mo. 140; *Robinson v. United States Mutual Accident Ass'n*, 68 Fed. Rep. 625; *Fidelity & Casualty Co. v. Johnson*, 72 Miss. 333; *Jones v. United States Mutual Accident Ass'n*, 61 N. W. Rep. [Ia.] 485.)

SULLIVAN, J.

This was an action on a policy of accident insurance issued by the Railway Officials & Employés Accident Association of Indianapolis, Indiana, to Elmer E. Drummond, insuring him against bodily injuries inflicted by "external, violent, and accidental means." The plaintiff, Susan E. Drummond, was the mother of the assured, and the beneficiary named in the contract. A trial to a jury in the district court of Lancaster county resulted in a verdict and judgment for the plaintiff. The defendant prosecutes error to this court.

The petition alleges the corporate character of the insurance company, the issuance of the policy, the death of the assured while the policy was in force, and the furnishing of proofs of death in accordance with the requirements of the contract. The allegation in regard to the death of Drummond is that, while riding along the public

road near the city of Holdrege, he was shot and killed by an unknown person. There is no direct averment that death resulted from an accident, and the petition does not disclose the fact that, by the express terms of the contract, written on the face thereof, the right of recovery was made to depend upon the injury being accidental. The cause of action was stated as though it had arisen on an ordinary life policy. The defendant, however, made no objection to either the form or substance of the pleading, but filed an answer thereto, which, after admitting the issuance of the policy, denying the sufficiency of the proofs of death, and alleging that Drummond was murdered by a foot-pad or highwayman, proceeds as follows: "Defendant alleges that said certificate of membership in said Railway Officials & Employés Accident Association and said policy of insurance provided, among other things, as follows: That 'the defendant shall not be liable for injuries resulting from the intentional acts of the insured, or any other person, or death resulting from such acts, whether the insured or such other person be sane or insane (injuries inflicted by burglars excepted), or injuries or death while in or at any place or assembly prohibited by law.' Defendant alleges that the deceased, Elmer E. Drummond, came to his death at the hands of some person unknown to this defendant, but which this defendant states upon information and belief to have been a foot-pad or highwayman, and that said Elmer E. Drummond came to his death and was intentionally shot and killed while he was at a place prohibited by law, to-wit, a brothel or house of ill-fame in the town of Holdrege, and that said injuries or death occurred at said place and in consequence of his being there and by reason of his being engaged in an unlawful act, by reason whereof said policy of insurance is void, and the said defendant is not liable thereon, or on said certificate of membership in said defendant association." The plaintiff replied traversing the new matter pleaded by the defendant. At the trial the policy was received in evidence without objec-

tion, and among a large number of conditions printed on its back appears the provision set out in the answer.

The first argument of the defendant is that the judgment is erroneous because the petition does not state a cause of action on the policy. This contention cannot be sustained. According to a familiar rule of pleading, the deficiencies of the petition may be, and often are, supplied by the averments of the answer. "When the defendant chooses," says Parker, C. J., in *Slack v. Lyon*, 9 Pick. [Mass.] 62, "to understand the plaintiff's count to contain all the facts essential to his liability, and, in his plea, sets out and answers those which have been omitted in the count, so that the parties go to trial upon a full knowledge of the charge, and the record contains enough to show the court that all the material facts were in issue, the defendant shall not tread back and trip up the heels of the plaintiff on a defect which he would seem thus purposely to have omitted to notice in the outset of the controversy." To the same effect are *Erwin v. Shaffer*, 9 O. St. 43; *White v. Joy*, 13 N. Y. 83; *Kercheval v. King*, 44 Mo. 401; Bliss, Code Pleading [3d ed.] 437; 1 Boone, Code Pleading, sec. 236. In this case the petition and answer, taken together, affirmatively show every fact which plaintiff was required to plead and prove,—every fact upon which her right of recovery under the contract depended, —viz., that the policy was issued and was in force when the assured died; that his death was the result of a violent external injury; that such injury was, as to him, and within the meaning of the contract, accidental; and that the death proofs were duly furnished. In other words, when the allegation of the answer that Drummond was murdered by a highwayman is read into the petition it is shown that the injury causing his death was not intentionally self-inflicted, but was an accident within the settled interpretation of the agreement written on the face of the policy. The plaintiff was only required to bring her case within the terms of the policy appearing on its face. She was not required to negative the condi-

tions or exceptions indorsed thereon. In declaring on a contract which contains exceptions, conditions, or provisos it is not necessary for the pleader to do more than allege the general clause under which his cause of action has arisen. He is not obliged to set out and negative a distinct clause which operates as an exception to the general clause, but which is not incorporated in it. (*Meadows v. Pacific Mutual Life Ins. Co.*, 129 Mo. 76, 50 Am. St. Rep. 427; *Commonwealth v. Hart*, 11 Cush. [Mass.] 130.) It results from these considerations that in determining whether a cause of action has been stated on the contract in suit the condition of the policy pleaded by the defendant is not to be taken into account. That condition afforded the basis for an affirmative defense which would defeat a recovery if sustained by adequate proof. The burden of proving that death resulted from any of the causes enumerated on the back of the policy was on the defendant. (*Anthony v. Mercantile Mutual Accident Ass'n*, 162 Mass. 354, 44 Am. St. Rep. 367; *Grangers Life Ins. Co. v. Brown*, 57 Miss. 308, 34 Am. Rep. 446; *Home Benefit Ass'n v. Sargent*, 142 U. S. 691.)

It has thus far been assumed that the killing of Drummond was an accident within the import of the contract. This view of the matter is vigorously combatted by counsel for the defendant. It seems to be entirely justified by the authorities. An accident, within the meaning of contracts of the kind here considered, includes any event which takes place without the foresight or expectation of the person acted upon or affected thereby. This, in substance, is the definition given in Webster's Unabridged Dictionary and in Bouvier's Law Dictionary. It has been either recognized as correct or expressly approved in the following cases involving accident insurance: *Richards v. Travelers Ins. Co.*, 89 Cal. 170, 23 Am. St. Rep. 455; *Paul v. Travelers Ins. Co.*, 112 N. Y. 472, 8 Am. St. Rep. 758; *McGlinchey v. Fidelity & Casualty Co.*, 80 Me. 251, 6 Am. St. Rep. 190; *Lovelace v. Travelers Protective Ass'n*, 126 Mo. 104, 47 Am. St. Rep. 638; *Insurance Co. v. Bennett*,

20

90 Tenn. 256, 25 Am. St. Rep. 685; *Hutchcraft v. Travelers Ins. Co.*, 87 Ky. 300, 12 Am. St. Rep. 484; *Supreme Council v. Garrigus*, 104 Ind. 133, 54 Am. Rep. 298; *American Accident Co. v. Carson*, 99 Ky. 441, 59 Am. St. Rep. 473; *Button v. American Mutual Accident Ass'n*, 92 Wis. 83, 53 Am. St. Rep. 900. In the case of *American Accident Co. v. Carson, supra*, it is said: "While our preconceived notions of the term 'accident' would hardly lead us to speak of the intentional killing of a person as an 'accidental' killing, yet no doubt can now remain, in view of the precedents established by all the courts, that the word 'intentional' refers alone to the person inflicting the injury, and if as to the person injured the injury was unforeseen, unexpected, not brought about through his agency designedly, or was without his foresight or was a casualty or mishap not intended to befall him, then the occurrence was accidental, and the injury one inflicted by accidental means within the meaning of such policies." In *Fidelity Co. v. Johnson*, 72 Miss. 333, it was held, construing the language of an accident policy, that one who was hanged by a mob came to his death by "external, violent, and accidental means." The same conclusion was reached in *Hutchcraft v. Travelers Ins. Co., supra*, where one was waylaid by robbers and killed while being robbed. Cases apparently holding a contrary doctrine, so far as we know, are based on contracts containing a provision against liability where the injury causing death is intentionally inflicted either by the assured or any other person.

That there can be no recovery under such circumstances was conceded by the trial court in this case, and the jury were accordingly instructed as follows:

"The gun-shot wound that resulted in his death was an external and violent bodily injury (and was accidental as far as the insured was concerned). The defendant company, by virtue of its said undertaking to indemnify for such death, would in this action be liable beyond dispute, except for the said proviso of the contract relieving the company from liability for death resulting from the in-

tentional act of the insured, or from the intentional act of any other person."

"6. If from the evidence before you touching the matter you find and determine that the shooting and killing of the insured by the tramp was the accidental act of said tramp, then plaintiff is entitled to recover upon said policy. If the evidence before you convinces you that the shooting and killing of the insured was the intentional act of the tramp, then under the said conditions of the policy the death of the said Drummond is not covered by the said insurance and plaintiff cannot recover under said policy."

These instructions clearly and accurately stated the law applicable to the case and were properly given, unless it is conclusively shown by the evidence that the killing of Drummond was the intentional act of the robber who shot him. The tragedy occurred under the following circumstances: On the night of June 30, 1894, the deceased, with a companion named Rundstrum, visited a brothel in the city of Holdrege. They left the house about midnight, had just mounted their bicycles, and were very slowly proceeding to their homes, Rundstrum being about six feet in advance of Drummond, when a couple of foot-pads, who had been lying in wait for any one who might come out of the house, leveled revolvers on them and called on them to halt or throw up their hands. Rundstrum stopped at once, dropped his right foot to the ground, and looking around saw Drummond in about the same attitude with his hands on the handlebars of his machine. Just as Rundstrum looked around at him in that position he saw one of the robbers with a revolver in his hand, saw the flash, heard the report, and Drummond staggered forward, fell to the ground and in a few minutes expired. After the shot was fired the man who did the shooting said to Drummond, "Now, then, can you do as you are told?" to which Drummond answered, "Yes, sir." The robber whose attention was directed to Rundstrum said to his associate, "Did you

hurt the man?" to which the assassin answered, "I guess I touched him a little." The other man then said, "Beat him over the head and see if you can't make him talk." The pockets of both Rundstrum and Drummond were then rifled, after which the robbers fled and have never been apprehended. Rundstrum testified that he saw Drummond offer no resistance to the demand of the man who shot him. Prior to the happening of the events here mentioned, but on the same evening, the foot-pads had waylaid and robbed a man named Roberts, whom they forced to accompany them and who was with them when Drummond was killed. The testimony of Roberts, taken in connection with the other evidence in the case, leaves no room to doubt that robbery was the specific and sole end the foot-pads had in view. To the accomplishment of that end the killing of Drummond was neither a necessary means nor even one well-suited to the purpose. Indeed the act, under the circumstances, was distinctly and manifestly calculated to frustrate their scheme rather than facilitate it. The personal safety of the robbers, as well as the success of the enterprise, would seem to depend upon the business being quietly and quickly done. To discharge a pistol was to attract attention and invite interference from officers or other persons who might be in the vicinity. As Drummond made no resistance, but yielded prompt obedience to the demand of the man who killed him, the killing, on the hypothesis of the defendant, was a needless and wanton murder. We would long hesitate before accepting that conclusion as being the more reasonable and probable solution of the question, and we do not at all doubt the propriety of the court's action in submitting the matter to the jury for their determination. The inference that the pistol in the hand of the robber was accidentally discharged and that the killing of Drummond was unintentional, is a reasonable deduction from all the circumstances proven on the trial. The verdict is sustained by sufficient evi-

dence.    There was no error in the giving or refusal of instructions.    The judgment is right and is

AFFIRMED.