MAUDE LICKLEIDER, Appellant, v. IOWA STATE TRAVELING MEN'S ASSOCIATION, Appellee.

**INSURANCE:** Accident Insurance—Accidental Means—Over-Exertion—Burden of Proof. Death from "voluntary over-exertion" is a defense upon which the insurer has the burden of proof, under a policy of accident insurance which provides against liability for such cause.

**INSURANCE:** Accident Insurance—Diseased Condition of Insured—Effect. When one is, by a policy of accident insurance, indemnified against death from injuries of a specified nature, and dies from such injuries, it is no defense that he was, by disease, more susceptible to fatal results from such injuries than he would have been had he been free from such disease.

**INSURANCE:** Accident Insurance—"Accident" Defined—Injury Intervening in Doing Voluntary Act. An accident is an event which takes place *without one's foresight or expectation.* Such an event is none the less an accident by accidental means because it intervenes in the doing of some *voluntary* act by the one injured, unless the doing of such voluntary act is attended with such manifest danger of injury to the doer that he will not be heard to say that he did not anticipate the consequences.

PRINCIPLE APPLIED: An accident policy insured against death through "external, violent, and *accidental* means." Deceased and another had removed the casing and inner tube on an auto tire, and had patched the same. After replacing the tire, deceased discovered that the tube still leaked, and he, without assistance, attempted to take off the casing again. He kneeled upon one knee, took hold of the tire with both hands,

pulled and jerked at it for some time, and finally it came off, with such suddenness that he slipped, and, to maintain his equilibrium, he staggered back several paces, with the tire in his hands. He immediately turned pale, complained of being ill, dropped the tire, put his hand to his head, lay down upon the ground, was at once cared for, but died within an hour. Prior to the injury, the insured was, apparently, in robust health.

*Held*, to present a jury question on the issue whether the deceased died by accidental means.

INSURANCE: Accident Insurance—Death by Accidental Means—
4 Prima-Facie Case. A prima-facie right of recovery on an ordinary accident insurance policy is made by evidence (a) that the insured was engaged, even voluntarily, in the performance of a legitimate act, not manifestly dangerous; (b) that, while so engaged, the insured unexpectedly received *some* injury; and (c) that the insured died soon thereafter.

*Appeal from Polk District Court.*—CHARLES A. DUDLEY, Judge.

FEBRUARY 9, 1918.

MODIFIED ON REHEARING, SEPTEMBER 30, 1918.

ACTION at law to recover upon a policy or certificate of accident insurance. There was a directed verdict and judgment for the defendant, and plaintiff appeals.—*Reversed.*

*Clinton L. Nourse,* for appellant.

*Sullivan & Sullivan,* for appellee.

WEAVER, J.—The defendant, an accident insurance association, issued its policy or certificate to one Bert A. Dunbar, insuring him against bodily injury occurring through external, violent, and accidental means, and resulting, independently of all other causes, in death within ninety days from the date of the accident. While this insurance was in full force, and the insured was a member of the association in good standing, Dunbar died, and this action was brought on said contract of insurance by the beneficiary

therein named, on the theory that his death was the result of accidental bodily injury, within the scope and meaning of said contract. The defendant resists payment of the insurance, alleging that Dunbar's death resulted from natural causes, disease or bodily infirmity or voluntary over-exertion; and that, for death so resulting, there is no liability under the terms of the policy.

The policy was issued November 21, 1910. It provides against liability of the insurer for death of the insured resulting wholly or partially, directly or indirectly, from disease or bodily infirmity or from voluntary over-exertion. At the date of the contract, Dunbar was in apparently strong and robust health. He was a traveling salesman for a wholesale grocery house at Des Moines, and had his headquarters at Carroll, Iowa. In his business, he kept and made frequent use of an automobile. On July 1, 1913, with another man and two women as guests in his car, he set out for a trip to Glidden and Coon Rapids, and thence back to Carroll. On the road, one of the tires on the car sustained a puncture; and Dunbar, with the aid of the other man, took off the tire, patched the inner tube, and then, replacing the tube and casing on the wheel, started to complete the trip. It soon appeared that the puncture had not been effectually mended; and stopping again, he, working alone, attempted once more to remove the tire, but for some reason it resisted his efforts. Kneeling upon one knee, he took hold of the casing with both hands, pulling and jerking at it for some time, when it came off with a snap and with such suddenness as to cause him to slip or stagger back, with the tire in his hands. He immediately turned pale, complained of being very ill, put his hand to his head, and lay down on the ground. Help was called, and he was removed to a hotel, where he died, about an hour later. A post-mortem examination was made of the body by three physicians, who found that the immediate cause of death was due to a blood clot

in the right coronary artery, near the heart. Two of them gave it as their opinion that Dunbar died of arterio-sclerosis and obstruction of the coronary artery; that he was afflicted with abnormal arterio-sclerosis; and that the coronary arteries were quite sclerotic. On the other hand, the third doctor testified that he found no more arterio-sclerosis than is usual with a man of the size and age of the deceased. He further said that blood clot was due to inflammation or injury to the artery, and that he did not observe or find any such inflammation in the body.

The foregoing is a brief summary of the record as to the facts, but is sufficiently complete for our consideration of the question whether they made a case upon which plaintiff was entitled to go to the jury.

When the issues joined are viewed in connection with the testimony of the medical experts, it is too clear for argument that the court could not properly rule, as a matter of law, that Dunbar's death was the result of disease or other natural causes, and we do not understand that such was the position of the trial court, or that it is insisted upon in this court. It is quite apparent that the direction of a verdict in defendant's favor was grounded upon the thought either that the insured did not come to his death through accidental means, or that his death resulted from voluntary over-exertion. Upon the first of these propositions, the burden was doubtless upon plaintiff to present evidence from which the jury could properly find that the death of the deceased resulted from injuries of the nature or kind against which the policy insured him; but the claim or assertion that he died from over-exertion is in the nature of an affirmative defense, upon which the defendant assumes the burden. We therefore turn to a consideration of those features of the case, as shown by the record.

1. INSURANCE: accident insurance: accidental means: over-exertion: burden of proof.

I. Was there any evidence on which the jury could be

permitted to find that the death of Dunbar was the result of external, violent, and accidental means, independent of all other causes?

As we have seen; it is not open to doubt that the question whether he died of disease was for the jury. The only evidence tending to show that the death was the natural result of disease is that of the two physicians who express the opinion that he died of arterio-sclerosis,—which, as we understand it, is the technical term for hardening of the arteries; but this is met by other evidence that the sclerosis discovered in this case was such only as is ordinarily found in men of his size and age, and the weight and influence to be accorded to these conflicting opinions was for the jury. If the arteries of the deceased were sclerotic, but the sclerosis was such only as is the natural or usual accompaniment of increasing years, the fact, if it be a fact, that a bodily injury sustained by him would be more likely to be fatal than would be the case if such condition did not exist, would not prevent a recovery on the policy, should it otherwise appear that the injury was of the nature or kind described in the contract. *Freeman v. Mercantile Mut. Acc. Assn.*, 156 Mass. 351.

2. INSURANCE: accident insurance: diseased condition of insured: effect.

Coming, then, to the question whether there is in this record any testimony tending to show that the death of the insured was the result of injury from accidental cause or means, we confront again the oft-recurring inquiry: What is an accident? and when is a means or cause accidental, within the meaning of the contract? It is not always easy to define a word, though one of familiar, common, and daily use, in other words or terms which shall at once be so clear, accurate, and comprehensive as to be everywhere and always applicable. Attempts to accomplish such a definition quite as often serve to confuse

3. INSURANCE: accident insurance: "accident" defined: injury intervening in doing voluntary act.

as to elucidate; and usually, courts can well assume that common speech and common usage are as little susceptible to judicial explanation as an axiom in mathematics is susceptible to improvement by changing its form of expression. One thing, at least, is well settled: the words "accident" and "accidental" have never acquired any technical meaning in law, and, when used in an insurance contract, they are to be construed and considered according to the common speech and common usage of people generally. Hundreds of attempts have been made by the courts to define these words in other terms; and while some of them may be regarded as helpful, in so far as they adhere to popular usage, others have served only to confuse the situation, if not, in fact, to grossly mislead. Certain it is that no attempt in this direction is in any respect an improvement upon the definition found in our standard lexicons, and from these, by way of illustration, we quote from Webster's International Dictionary: *"Accident*: An event which takes place without one's foresight or expectation; an undesigned, sudden, and unexpected event; chance; contingency." *"Accidental*: Happening by chance or unexpectedly. *Synonyms,* —undesigned; unintentional; unforeseen; unpremeditated." This is also the meaning given to these words in *United States Mut. Acc. Assn. v. Barry,* 131 U. S. 100 (33 L. Ed. 60). It is an event from an unknown cause, or an unexpected event from a known cause (*Raiford v. Wilmington & Weldon R. Co.,* 130 N. C. 597) ; a thing done or disaster caused without design or intention (*Steamboat Blue Wing v. Buckner,* 51 Ky. 246, 250) ; an unusual and unexpected result attending the performance of a usual or necessary act (*Providence Life Ins. & Inv. Co. v. Martin,* 32 Md. 310). Mr. Cooley, in his very thorough compilation of the cases, says that an event which the actor did not intend to produce is produced by accidental means. 4 Cooley's Briefs on Insurance 3156. The same thought is adopted, though va-

riously expressed, in Joyce on Insurance (1897) Section 2863; Bouvier's Law Dictionary; Kerr on Insurance, p. 380; 2 Bacon on Benefit Societies, Section 482; *Richards v. Travelers' Ins. Co.*, 89 Cal. 170 (26 Pac. 762); *Railway O. & E. Acc. Assn. v. Drummond*, 56 Neb. 235 (76 N. W. 562). The list could be extended quite indefinitely; but it can hardly be denied that these authorities, cited from courts and writers of the highest standing, make it clear that the meaning of these words in law differs in no essential respect from the meaning attributed to them in popular speech.

There is, however, another alleged definition which has had a degree of judicial sanction, which ought not to be passed without notice. According to this definition, if correctly interpreted by counsel for the defense, an injury happening to the insured through his own voluntary act is not an accident, nor is his hurt to be attributed to accidental means—a proposition which is wholly at variance with every statement of the true rule, as illustrated in the numerous authorities above cited. It may be, and it is, true that, if the insured does a voluntary act, the natural, usual, and to be expected result of which is to bring injury upon himself, then a death so occurring is not an accident, in any sense of the word, legal or colloquial; and it is only when thus limited that the rule so stated has any proper application. To illustrate: A may be foolhardy enough to believe that he can leap from a fourth-story window with safety, and, trying it, is killed. B, desiring to descend from the same floor, climbs out upon a fire escape, which collapses, and he falls to his death. In no proper sense of the word is A's death accidental or caused by accidental means, nor can any reasonable person deny that B's death is accidental and produced by accidental means,—yet neither would have happened but for the voluntary act of the deceased. To say that the deceased, in the case at bar, did just what he attempted and intended to do,—that is, he attempted to

remove and did remove the tire from the wheel,—and there-
fore there was no accident or accidental means producing
his injury, is to beg the whole question, and to ignore the
well-established meaning of words.

"Accident insurance companies do business mostly with
the common people, and the term 'accident,' as used in
these policies, should be defined according to the ordinary
and usual understanding of its signification."

It makes no difference whether the injured man or
some other person voluntarily sets in motion the first of
a series of events which, in connected line of causation, re-
sults in his injury or death. If, to use the
language I have quoted, the resulting inju-
ry and violence to him "unexpectedly took
place," or was "an unexpected result from
a known cause," or was produced "without
design or intention," or was "an unusual and unexpected
result attending the performance of a usual or necessary
act," or was an "event happening without the concurrence
of the will of the person by whose agency it was caused,"
or if it was "caused or produced without design," it falls
directly within the letter and spirit of the definition which
has been placed upon the words by the most competent lexi-
cographers, as well as by our most eminent jurists who have
given attention thereto. True, the deceased did undertake
to remove the tire; and, finding it more difficult than he
anticipated, he exercised his strength, with a considerable
degree of violence, to pull or jerk it loose; and this action
was undoubtedly voluntary. But it is equally apparent that
the tire gave way, or came loose with an unexpected sud-
denness, causing him to stagger or fall back from the
stooped and strained position he was occupying; and in our
judgment it was open to the jury to find, from all these
circumstances, that, in this involuntary and undesigned
movement so unexpectedly produced, he sustained a strain

4. INSURANCE:
accident in-
surance:
death by acci-
dental means:
prima-facie
case.

or injury to some of his vital organs which proved fatal. A death so produced would be accidental, both in cause and in effect.

That this is correct may be demonstrated by very many precedents. These cases are so numerous that any attempt to mention them in much detail would unduly prolong this opinion. At the head of the list, however, we mention the case of *United States Mut. Acc. Assn. v. Barry,* supra. There, Dr. Barry, with two or three companions, in leaving a railway station platform, jumped to the ground below, a distance of four or five feet. His act was perfectly voluntary; but, in some way not shown by any direct proof, he sustained a jar which, it was claimed, caused an injury to his bowels, resulting in his death; and, although there was no evidence by any witness that he was seen to slip or fall, or that he alighted in any other manner than he intended, it was held that the jury was at liberty to find that, by some unexpected or unforeseen or involuntary movement of his body in his descent from the platform to the ground, the injury was caused. The Supreme Court also examined and approved an instruction to the jury to the effect that while, if Barry jumped and alighted just as he intended, and nothing unforeseen, expected, or involuntary occurred, affecting his movement or causing him to strike the ground in any different way than he intended, then his injury was not caused by accidental means; but, if "there occurred, from any cause, any unforeseen or involuntary movement, turn, or strain of the body which brought about the alleged injury, or if there occurred any unforeseen circumstance which interfered with or changed such a downward movement as he intended to make, or as it would be natural to expect under such circumstances, * * * and injury thereby resulted, then the injury would be attributable to accidental means." If this be good law (and the eminence of the court pronouncing it commands our respect), then the

case at bar was one for a jury. If any reference is needed
to other cases which are, in all essential respects, like this
in fact and principle, we may mention the following, in each
of which the insured was allowed to recover: In *Young
v. Railway Mail Assn.,* (Mo.) 103 S. W. 557, the insured, in
lifting a mail sack, ruptured a blood vessel. In *McCarthy v.
Travelers' Ins. Co.,* 8 Biss. (C. C.) 362, the insured suffered
a similar injury in exercising with Indian clubs. In *Standard L. & A. Ins. Co. v. Schmaltz,* 66 Ark. 588, the insured,
a worker in a machine shop, undertook to remove a piston
head, which came off more easily than expected. The man
exerted considerable strength to prevent its falling, and was
immediately taken sick and died. In *Atlanta Acc. Assn.
v. Alexander,* 104 Ga. 709, the insured, a blacksmith, in
swinging a heavy hammer, suddenly felt a severe pain in
his abdomen, where a hernia appeared, with fatal results.
In *Rodey v. Travelers' Ins. Co.,* 3 N. M. 543 (9 Pac. 348),
the insured, while bathing, dived from a plank into the water, causing injury to his eardrum. In *Horsfall v. Pacific
Mut. L. Ins. Co.,* 32 Wash. 132, the insured lifted a heavy
iron bar, causing dilation of the heart, ending in death.
In *Martin v. Travelers' Ins. Co.,* 1 F. & F. 505, the insured
was injured in lifting a heavy burden. In *Ludwig v. Preferred Acc. Ins. Co.,* 113 Minn. 510 (130 N. W. 5), the insured, a baseball player, was running a base, and voluntarily "made a dive for second," and was injured. In *McGlinchey v. Fidelity & Cas. Co.,* 80 Me. 251, the insured sustained a strain caused by trying to hold a frightened horse.

In *North Am. L. & A. Ins. Co. v. Burroughs,* 69 Pa. 43, 51,
the assured, while assisting in loading hay, received a strain
or injury resulting in death. In *Fetter v. Fidelity & Cas.
Co.,* 174 Mo. 256, the insured was using a pole to raise a
window, when the pole slipped, causing him to fall forward and receive an injury. In *Hamlyn v. Crown Acc. Ins.
Co.,* 1 Q. B. Div. (1893) 750, the insured stooped to pick

up a marble for a child, and in doing so, dislocated his knee. To the same legal effect is *Clark v. Iowa S. T. M. Assn.*, 156 Iowa 201, 209, where the insured was drowned by reason of shock resulting from his voluntary entry into the cold water. With perhaps a single exception, the insurer in each and every one of the foregoing cases had stipulated against liability for injury or death of the insured except from accidental cause; and in each and in every one, a recovery was allowed.

The rule, clearly deducible from the overwhelming weight of authority, is that, when injury or death follows or results from a voluntary act of the insured, and the act is one which is not manifestly dangerous, but which is ordinarily done or performed without serious consequences to the doer, such result is caused by accidental means. This is nowhere better stated than by Sanborn, J., in *Western C. T. Assn. v. Smith*, 85 Fed. 401, where he says:

"An effect which does not ordinarily follow and cannot be reasonably anticipated from the use of those means, an effect which the actor did not intend to produce and which he cannot be charged with the design of producing, * * * is produced by accidental means."

This same proposition, in substantially like terms, was quoted and approved by this court in *Jenkins v. Hawkeye C. M. Assn.*, 147 Iowa 113, 117. The mere fact that the insured may have been negligent, and that such negligence may have contributed to his injury, is no defense to the action on the policy. *Bohaker v. Travelers' Ins. Co.*, 215 Mass. 32. In the recent case of *Hanley v. Fidelity & Cas. Co.*, 180 Iowa 805, we had occasion to consider the request of an insurer for an instruction to the jury that, if the insured was voluntarily doing an act, by means which were "exactly what he intended to use and did use and was prepared to use," then, while an injury to him in doing such an act might be accidental, the means by which it was produced

would not be accidental. We sustained the trial court in refusing to so instruct, and in so doing, said:

"To have charged as thus asked would have been to utterly mislead the jury into the thought that, if Hatfield voluntarily undertook to drive the screw, and in so doing was injured by slipping or falling on the screwdriver, then such injury was not accidentally caused, within the meaning of the policy,—a rule which, if carried to its logical extent, would render the protection of an accident insurance policy the merest farce. Practically speaking, every unexpected or unintended personal injury may be traced, in some of its lines of causation, to the voluntary act of the victim."

It is manifest, from what we have said, that the injury was accidental. To come within the terms of the policy, such accident must have been external and violent. Myrtle Caldwell was asked, on cross-examination:

"You did not notice Mr. Dunbar slip, did you? A. Only when the tire came off. It came off suddenly, with a jerk."

If, then, Dunbar, in pulling the tire from the wheel, slipped, as might be found from this testimony, and fell in consequence thereof, the jury might have concluded, not only that the injury was accidental, but also that it was due to slipping as the tire came off, and that this was accidental means. No argument is required to demonstrate that such means might have been found to be external and violent. For the reasons stated, we are of the opinion that the trial court erred in directing a verdict, and the judgment is—*Reversed.*

PRESTON, C. J., LADD, EVANS, GAYNOR, SALINGER, and STEVENS, JJ., concur.