HARRIET L. BERNHARD, APPELLEE, V. PRUDENTIAL INSURANCE COMPANY OF AMERICA, APPELLANT.

278 N. W. 846

FILED APRIL 1, 1938. No. 30227.

*Young & Williams*, for appellant.

*Gray & Brumbaugh, contra.*

Heard before GOSS, C. J., ROSE, DAY, PAINE, CARTER and MESSMORE, JJ.

PAINE, J.

The plaintiff sues to recover upon the provisions for double payment for accidental death contained in seven policies of life insurance upon the life of her husband, Otto H. Bernhard. The answer admitted the issuance of the policies, and that they were in force at the time of the death, but denied that any accidental death benefit is due, alleging that death was brought about by Bernhard's own

wrongful act. At the close of the evidence, each party moved for a directed verdict, and the court discharged the jury and entered judgment on each cause of action for a total amount of $2,800.92, and allowed an attorney fee of $300.

The facts in the case may be briefly stated as follows: Otto H. Bernhard was 52 years old, weighed 185 pounds. He left his home in Omaha at 6 a. m., on May 29, 1934; between 1 and 2 o'clock that afternoon he stopped his car in front of a restaurant at Rosalie, Thurston county, Nebraska, and went in and had a steak dinner, visiting with the proprietor. In this restaurant, the front room is 24 by 28 feet, and at the rear there is a 16-foot counter, with some ice cream tables on one side of the room, and on the other side a cigar stand and card tables.

The village marshal, Forest Brown, testified that he had never met Bernhard prior to this occasion, but had previously seen him drive through town and stop at different places, and had decided to search his car the first time he got a chance. Marshal Brown had been checking water meters, and in going past the café saw this car and waited outside for the owner. He testified that he was wearing a regular officer's star, which was pretty well exposed, and told the deceased he was an officer as soon as he came out to go to his car.

In the conversation that ensued, marshal Brown testifies he told him: "I understand you are hauling liquor, and I believe I will look your car and case over, and see if you are." Bernhard asked, "What are you going to do?" and the marshal said, "I am going to arrest you if you are hauling liquor." Bernhard took a large sample-case out of the car and walked into the café with it, saying that it had candy in it, and placed it on the counter at the rear of the room. The marshal said to open it up and let him look at it, and reached over and knocked the case a little, and said, "It sounds like liquid in here of some kind, don't it? I guess I will take the case." Bernhard started to go out of the restaurant, leaving the case on the rear counter,

and the marshal stepped in front of him, and thereupon he whirled and struck the marshal a violent blow in the eye, and continued striking him. The marshal pulled his gun and told him he would shoot, and Bernhard said, "Shoot, God damn you, you haven't got the guts." The marshal shot, and the bullet struck the edge of a watch in the left shirt pocket and was deflected into Bernhard's body, from the effects of which he died within a minute or two.

Marshal Brown said Bernhard was turned sidewise toward him, and that "it seemed to me he was coming around with a gun or was going to unloosen another left hook, or something, and I pointed this gun at his upper left shoulder or forearm. I didn't really intend to seriously injure him, as far as that is concerned."

Marshal Brown called a doctor and the sheriff, and went out and examined the insured's car and found it contained four gallons of alcohol in tin containers and three jugs of whisky, all of it being moonshine. There was no candy in the car, but there was an extra set of license plates in it, Kansas license plates. The examining doctor testified that the bullet wound was just below the left nipple, which is where the heart is normally located.

In this case it was stipulated that the premiums were all paid, and that all of the policies were in force on the date of the insured's death, and upon proper proof of death being made the defendant insurance company immediately paid to plaintiff the full life insurance benefits due on each of the seven policies, but the company denied liability upon the provision for double liability in case death results solely through external, violent, and accidental means.

The defendant sets out nine errors relied upon for reversal, which cover every phase of the case. The plaintiff insists that there is no provision in any of these policies which renders them void in case the insured is violating the law at the time of his death, nor is there any provision which involves the question whether the insured came to his death during the commission of an offense. 6 Couch,

Cyclopedia of Insurance Law, sec. 1236; *Piotrowski v. Prudential Ins. Co.*, 141 Misc. Rep. 172, 252 N. Y. Supp. 313.

The plaintiff also calls to our attention that the deceased was wearing bifocal glasses; that the officer had his gun at about his waistline, and that the deceased may not have seen the gun at all, and, as some evidence indicates, that the marshal's badge may have been under the bib of his overalls, from which plaintiff argues that the deceased may not have known that the marshal was an officer of the law, but the evidence does not support this contention on the part of the plaintiff.

The plaintiff contends that an event which takes place without the foresight or expectation of the person acted upon must be considered accidental, citing *Railway Officials & Employees Accident Ass'n v. Drummond*, 56 Neb. 235, 76 N. W. 562. The facts in this case show a wanton killing of a young man by a pair of hold-ups, although the young man had stopped his bicycle immediately upon their command and did no act to provoke them in any way.

We are cited to many similar cases. In *DeMello v. John Hancock Mutual Life Ins. Co.*, 281 Mass. 190, 183 N. E. 255, the deceased was a fisherman, and was shot by a bullet from a rapid-firing gun of United States coast guards for violating the National Prohibition Act. He carried a policy providing for double accidental death benefits. The coast guard did not intend to kill or wound any one, but fired low at the hull of the boat to disable it. The court is of the opinion that the death was not incurred by accidental means. He was shot and killed while engaged in the transportation of liquor in violation of the federal statute, and it is held to be contrary to public policy to permit a recovery in such case.

It is said that, in suits on accident policies insuring against the risk of death from external violence and accidental causes, mere proof of death will not suffice, but plaintiff must also prove that the death was accidental. The true rule is that, where plaintiff's proof shows a vio-

lent death, and does not show it to have been self-inflicted, his case is *prima facie* made out, because suicide will not be presumed. This statement is taken from *Boggan v. Provident Life & Accident Ins. Co.*, 79 Fed. (2d) 721. If, however, the evidence shows not merely a death by shooting, but that death occurred as the result of an encounter, then it is incumbent upon the plaintiff to take the initiative again and show by other evidence that the death was accidental, citing *Mutual Life Ins. Co. v. Sargent,* 51 Fed. (2d) 4; *Scales v. Home Life Ins. Co.,* 89 Fed. (2d) 580; *Metropolitan Life Ins. Co. v. Roma,* 97 Colo. 493, 50 Pac. (2d) 1142 (involving the death of a bootlegger).

Let us now examine a leading case where a homicide is held to be an accident. Such is the case of *Employers Indemnity Corporation v. Grant,* 271 Fed. 136, 20 A. L. R. 1118, in which a passenger conductor endeavored, as his rules required him to do, to get a passenger out of the toilet room when the train was approaching a terminal junction. The passenger refused to unlock the door and refused to come out. The conductor went into the express car and got a revolver to scare the passenger. He climbed up on the arm of the car seat and tapped lightly on the glass top of the toilet, and ordered the passenger to come out. As soon as the conductor's head could be seen through this glass, the passenger shot the conductor dead. The conductor did not know that the passenger had a revolver. In this case death was held to be accidental, for the conductor did not have any reason to anticipate that he would be killed.

It is well established by cases herein cited that, when an insured did not make an assault, nor was his death in any way due to his own misconduct, such death may be held to be accidental if it resulted from something unusual, which took place without the foresight or expectation of the insured, and could not have been reasonably anticipated by him.

But, on the other hand, when the insured was the aggressor, and made such an attack on another as would

naturally invite a deadly encounter, and if the aggressor is killed as the probable consequence of such assault, his death cannot be regarded as accidental, since he voluntarily put his life at stake, and deliberately took the chances of getting killed. *O'Bar v. Southern Life & Health Ins. Co.,* 232 Ala. 459, 168 So. 580.

An unusual case was that in which a husband was electrocuted for murdering his wife, and suit was brought on the ground that his death was accidental. The court held in *Diamond v. New York Life Ins. Co.,* 42 Fed. (2d) 910, that he could reasonably have anticipated that his death would ensue as the result of such act, and that his death was not a remote probability.

The cases appear to be clear on the following propositions: Did the insured have any reason to believe that the slayer had a dangerous weapon, which he intended to use? If he did not, the death might be held to be accidental. Did the insured make a vicious and unprovoked assault upon an officer who was attempting to arrest him? If he did, it has been held in many cases that the killing by the person assaulted is not an accident, although the assailant did not know that his victim was armed. *Meister v. General Accident Corporation,* 92 Or. 96, 179 Pac. 913, 4 A. L. R. 718, and annotation following; *Taliaferro v. Travelers Protective Ass'n,* 25 C. C. A. 494, 80 Fed. 368; *Erb v. Connecticut Mutual Accident Co.,* 232 Pa. St. 215, 81 Atl. 207; *Price v. Accidental Life Ins. Co.,* 169 Cal. 800, 147 Pac. 1175; *Mid-Continent Life Ins. Co. v. Dunnington,* 177 Okla. 484, 60 Pac. (2d) 1047; *Mutual Benefit Health & Accident Ass'n v. Ryder,* 166 Va. 446, 185 S. E. 894.

The shooting in the case at bar does not appear to the court to come within any of the very liberal definitions of the word "accident," as found in our decisions.

It appears that the insured not only commenced the assault, but provoked and invited violence, and was advancing in a threatening manner upon an officer of the law at the time he was shot. He should have anticipated and expected the reasonable consequences of his acts.

In our opinion, the court erred in overruling the defendant's motion for a directed verdict.

REVERSED.