LAURA DEMELLO *vs.* JOHN HANCOCK MUTUAL LIFE
INSURANCE COMPANY.

Bristol. October 25, 1932. — November 29, 1932.

Present: RUGG, C.J., CROSBY, DONAHUE, & LUMMUS, JJ.

*Insurance,* Accident. *Contract,* Construction, Validity. *Public Policy.*
*Words,* "Accidental means."

No recovery could be had upon a policy of life insurance providing for a
certain payment upon proof that the insured had "sustained bodily
injury, solely through external, violent and accidental means," result-
ing in his death, where it appeared that his death resulted from injuries
received when a boat, in which he was employed in the transportation
of intoxicating liquor in violation of the Federal statutes, was fired on
by a Federal revenue cutter after those in control of the boat had re-
fused to "bring-to" following the hoisting of the pendant and ensign
on the cutter and the firing of a gun thereon as a signal in accordance
with the requirements of such statutes: such death did not result from
"accidental means," and to allow recovery would be contrary to public
policy.

The mere circumstances, that the insured in the policy above described
did not have control of the navigation of the boat, that the coast guard
who fired the fatal shot did not intend to wound or kill, and that the
policy contained no exception from liability if the insured met his death
while engaged in the violation of law, did not affect the result above
stated.

CONTRACT, with a declaration in two counts, upon two
policies of insurance. Writ dated November 5, 1931.

In the Superior Court, the action was heard by *Walsh,* J.,
without a jury, upon an agreed statement of facts. Mate-
rial facts are stated in the opinion. The plaintiff asked for
the following rulings, of which the judge gave those num-
bered 1, 2, 3, 8 and 9, and refused the others.

"1. That the insurance policies, . . . with . . . [a cer-
tain] letter . . . contain the entire contracts between the
insurance company and the insured.

"2. That there are no implied exceptions applicable to
either policy of insurance.

"3. That there can be no exceptions implied where express exceptions are stipulated in the policies.

"4. That because the policies contain no expressed exceptions regarding the violation of a law, such defence is not available.

"5. That because the policies contain no expressed exceptions regarding a voluntary exposure to danger or a hazard, such defence is not available.

"6. That only such defences as set forth in the defendant's answer are to be considered by the court in defence if applicable to the facts and to the law.

"7. That the death was caused by bodily injury, solely through external, violent and accidental means.

"8. That the insured's death was caused by bodily injury that was external.

"9. That the insured's death was caused by bodily injury that was violent.

"10. That the coastguardsman, not intending to kill or wound, did kill by accidental means.

"11. That if the coastguardsman had no intention of wounding or killing, then the insured's death occurred by accidental means.

"12. That the death was not a natural and probable consequence of an attempt to smuggle liquor.

"13. That the death was not a natural and probable consequence of the circumstances in which the insured was at the time of the killing.

"14. That if the insured died as a result of a machine gun bullet fired by one who had no intention of wounding or killing then there is a presumption that death was caused by bodily injuries, solely through external, violent and accidental means.

"15. That if the insured died as a result of a machine gun bullet fired by another then there is a presumption that death was caused by external, violent and accidental means.

"16. That all the circumstances and attendant facts do not indicate that the insured assumed the risk of being killed.

"17. That all the circumstances and attendant facts do not indicate that the insured voluntarily permitted an assault upon himself or voluntarily placed himself in such a position that an assault would be the natural and probable consequence.

"18. That the plaintiff is entitled to recover as she is an innocent party and not involved in any questionable activity."

The defendant asked for the following rulings, all of which the judge gave:

"1. On all the evidence, the plaintiff cannot recover.

"2. The burden is on the plaintiff to prove that the death of the insured happened from accidental means.

"3. The insured was presumed to know the risk he was taking in violating the law, and that death might be the result of his voluntary conduct in such violation.

"4. The insured having at the time of his injury and death been engaged in a violation of the law of the United States and there having been a direct causal connection between such violation and the injury and death of the insured, the plaintiff cannot recover.

"5. The insured having at the time of his injury and death been engaged in a violation of the law of the United States and there having been a direct causal connection between such violation and the injury and death of the insured, the death of the insured did not result from bodily injury sustained solely through external, violent and accidental means within the terms of the policy, and the plaintiff cannot recover.

"6. As the injury to and subsequent death of the insured arose out of conduct voluntarily undertaken by him and was not an unlikely result of such conduct and was reasonably to be anticipated, the injury and death of the insured did not result from bodily injury sustained solely through external, violent and accidental means within the terms of the policy, and the plaintiff cannot recover."

The judge found for the defendant and reported the action for determination by this court.

The case was submitted on briefs.

*J. Minkin & A. Rusitzky,* for the plaintiff.
*O. S. Cook & M. R. Brownell,* for the defendant.

CROSBY, J. `This is an action to recover upon two policies of insurance issued by the defendant upon the life of Jose DeMello, the husband of the plaintiff, in each of which she was named as beneficiary. The second policy contained the following additional insurance: "Accidental Death Benefit Provisions. Upon receipt of due proof that the Insured after attainment of age 15 and prior to the attainment of age 70, has sustained bodily injury, solely through external, violent and accidental means, occurring after the date of this Policy and resulting in the death of the Insured within ninety days from the date of such bodily injury while this Policy is in force, and while there is no default in the payment of premium, the Company will pay in addition to any other sums due under this Policy and subject to the provisions of this Policy an Accidental Death Benefit equal to the face amount of insurance stated in this Policy less the amount of any disability benefit which has become payable under this Policy on account of the same bodily injury, except as provided below . . . ." The same provision was incorporated in the first policy after it was issued.

The case is submitted on an agreed statement of facts. It is recited therein that the policies were in force and the premiums had been paid at the time of the death of the insured, which occurred within a few hours after the bodily injuries resulting in death had been received. He was then twenty-nine years of age. Proof of death has been made to the defendant, and it has paid to the plaintiff the face amount of each policy, but it refuses to pay a like amount provided for under the provisions covering accidental death.

It is agreed as follows: The deceased was a fisherman for a number of years and at the time of his death was a member of the crew of a boat called the "Lassgehn," but he had no control in the navigation of the boat. Shortly after midnight of September 5, 1931, a coast guard picket boat, displaying the pendant and an ensign prescribed by U. S. Rev. Sts. § 2765, fired two warning shots from a rapid fire

gun at the "Lassgehn," and then fired a machine gun at its hull. The "Lassgehn" hauled to, and the insured was found inside the boat where he had been shot and mortally wounded by a machine gun bullet. The "Lassgehn" had sacks of liquor aboard which it was attempting to smuggle in violation of the Federal law. The coast guard did not intend to kill or wound the insured, and the machine gun shots were fired at the hull of the boat to disable it and cause it "to be hauled to." The death of the insured occurred under circumstances not covered by any of the exceptions set forth in the policies.

The plaintiff's first, second, third, eighth and ninth requests were given. The others were refused. The defendant's six requests were given, the fourth being as follows: "The insured having at the time of his injury and death been engaged in a violation of the law of the United States and there having been a direct causal connection between such violation and the injury and death of the insured, the plaintiff cannot recover."

The question presented for decision is whether or not the insured "sustained bodily injury, solely through external, violent and accidental means . . . resulting in . . . [his] death," within the meaning of the policy. The insured at the time of his death was acting in violation of a statute of the United States (41 U. S. Sts. at Large, 315, § 26,) which provides that "When the commissioner . . . or any officer of the law shall discover any person in the act of transporting in violation of the law, intoxicating liquors in any . . . water . . . craft . . . it shall be his duty to seize any and all intoxicating liquors found therein being transported contrary to law. Whenever intoxicating liquors transported or possessed illegally shall be seized by an officer he shall take possession of the . . . water craft . . . and shall arrest any person in charge thereof. . . ."

It is provided by 42 U. S. Sts. at Large, 979, § 581, that "Officers of the customs or of the Coast Guard, and agents or other persons authorized by the Secretary of the Treasury, or appointed for that purpose in writing by a collector may at any time go on board of any vessel or vehicle at

any place in the United States or within four leagues of the coast of the United States, without as well as within their respective districts, to examine the manifest and to inspect, search, and examine the vessel or vehicle, and every part thereof, and any person, trunk, or package on board, and to this end to hail and stop such vessel or vehicle, if under way, and use all necessary force to compel compliance, and if it shall appear that any breach or violation of the laws of the United States has been committed, whereby or in consequence of which such vessel or vehicle, or the merchandise, or any part thereof, on board of or imported by such vessel or vehicle is liable to forfeiture, it shall be the duty of such officer to make seizure of the same, and to arrest, or, in case of escape or attempted escape, to pursue and arrest any person engaged in such breach or violation."

U. S. Rev. Sts. § 2765, as amended by 38 U. S. Sts. at Large, 800, c. 20, reads: "Whenever any vessel liable to seizure or examination does not bring-to, on being required to do so, or on being chased by any cutter or boat which has displayed the pendant and ensign prescribed for vessels in the revenue service [coast guard], the master of such cutter or boat may fire at or into such vessel which does not bring-to, after such pendant and ensign has been hoisted, and a gun has been fired by such cutter or boat as a signal; and such master, and all persons acting by or under his direction, shall be indemnified from any penalties or actions for damages for so doing. If any person is killed or wounded by such firing, and the master is prosecuted or arrested therefor, he shall be forthwith admitted to bail."

It is not contended by the defendant that the bodily injury and death of the insured were not incurred through external and violent means, but it contends that they were not "accidental" as that word is used in the policies. The circumstance that the insured met his death from a cause not set forth in the exceptions in the policies is not conclusive upon the question of liability. It was said by Knowlton, C.J., in Davis v. Royal Arcanum, 195 Mass. 402, at page 407, "It is settled upon sound principles, and by a great weight

of authority, that, even if an ordinary policy of life insurance contains no provision in regard to death by suicide, there is no liability under it to the legal representatives of the insured, if his death is intentionally caused by himself when of sound mind." *Slocum* v. *Metropolitan Life Ins. Co.* 245 Mass. 565, 567, 570.

We are of opinion that the bodily injury and death of the insured were not incurred by "accidental means" within the meaning of the policy. He was shot and killed while engaged in the transportation of intoxicating liquor in violation of a Federal statute. He is presumed to have known that his act was illegal, that the boat containing the liquor might be fired upon by members of the coast guard, and that he might be killed. The insured knew that he was liable to be killed if those in control of the boat did not "bring-to" after the pendant and ensign had been hoisted, and a gun fired as a signal. We are of opinion that in these circumstances it would be contrary to public policy to permit a recovery.

It was held in *Hatch* v. *Mutual Life Ins. Co.* 120 Mass. 550, that no recovery could be had on a policy of life insurance on the ground of public policy when the insured died as the result of an illegal operation to which she voluntarily submitted. In that case the policy contained a provision that if the insured died as the result of a violation of law, the policy would be void. *Amicable Society* v. *Bolland*, 4 Bligh, N. S. 194, 211, decided by the House of Lords in 1830, was an action by assignees in bankruptcy to recover upon a policy of insurance which provided for the payment of a certain sum upon the death of the insured to his executors, administrators or assigns. He was convicted of forgery and for that offence was executed. The Lord Chancellor, in delivering the opinion, said: "It appears to me that this resolves itself into a very plain and simple consideration. Suppose that in the policy itself this risk had been insured against: that is, that the party insuring had agreed to pay a sum of money year by year, upon condition, that in the event of his committing a capital felony, and being tried, convicted, and executed for that felony,

his assignees shall receive a certain sum of money — is it possible that such a contract could be sustained? Is it not void upon the plainest principles of public policy? Would not such a contract (if available) take away one of those restraints operating on the minds of men against the commission of crimes? namely, the interest we have in the welfare and prosperity of our connexions. Now, if a policy of that description, with such a form of condition inserted in it in express terms, cannot, on grounds of public policy, be sustained, how is it to be contended that in a policy expressed in such terms as the present, and after the events which have happened, that we can sustain such a claim? Can we, in considering this policy, give to it the effect of that insertion, which if expressed in terms would have rendered the policy, so far as that condition went at least, altogether void?"

In *Burt* v. *Union Central Life Ins. Co.* 187 U. S. 362, the insured took out a policy on his life payable to his wife, if living, otherwise to his executors, administrators or assigns; later he and his wife assigned one-half interest to the plaintiffs as creditors of the assignors. The wife of the insured and all their children died intestate and the insured conveyed his remaining interest in the policy to the plaintiffs, who were his sole surviving heirs. Afterwards he was convicted of the murder of his wife, and was executed. Mr. Justice Brewer, speaking for the court, said at pages 365–366: "It cannot be that one of the risks covered by a contract of insurance is the crime of the insured. There is an implied obligation on his part to do nothing to wrongfully accelerate the maturity of the policy. Public policy forbids the insertion in a contract of a condition which would tend to induce crime, and as it forbids the introduction of such a stipulation it also forbids the enforcement of a contract under circumstances which cannot be lawfully stipulated for." In the opinion in that case, *Hatch* v. *Mutual Life Ins. Co.* 120 Mass. 550, *Amicable Society* v. *Bolland, supra, New York Mutual Life Ins. Co.* v. *Armstrong,* 117 U. S. 591, and *Ritter* v. *Mutual Life Ins. Co. of New York,* 169 U. S. 139, were cited with approval. The case at bar cannot be

distinguished in principle from these cases; it is governed by them, and by *Davis* v. *Royal Arcanum*, 195 Mass. 402, *Slocum* v. *Metropolitan Life Ins. Co.* 245 Mass. 565, *Supreme Commandery, Knights of Golden Rule* v. *Ainsworth*, 71 Ala. 436, *Cottingham* v. *Weeks*, 54 Ga. 275.

The circumstances that the insured did not have control of the navigation of the boat, that the coast guard who fired the fatal shot did not intend to wound or kill, and that the policy contained no exception from liability if the insured met his death while engaged in the violation of law do not affect the result reached.

We find no error in the manner in which the judge dealt with the requests of the plaintiff and the defendant. In accordance with the terms of the report, the entry will be

*Judgment for the defendant.*