PAULINE M. DAVIS *vs.* BOSTON MUTUAL LIFE INSURANCE COMPANY.

Worcester.  May 5, 1976. — July 8, 1976.

Present: HENNESSEY, C.J., BRAUCHER, KAPLAN, & WILKINS, JJ.

*Insurance,* Life insurance: death of insured as a result of his own crime, double indemnity.  *Public Policy.*

A beneficiary of a life insurance policy was entitled to recover on the policy after the death of the insured as a result of his own criminal conduct where the policy unambiguously negated any implied exception for violation of law by the insured other than a suicide clause and a provision excluding an additional benefit for accidental death if the death resulted from commission of a felony. [604-605]

History of the public policy in the Commonwealth which precluded recovery on a life insurance policy where the insured died as a result of his own criminal conduct. [605-607]

Inasmuch as the weight of modern authority is opposed to denial of recovery on a life insurance policy where the insured died as a result of his own criminal conduct, this court overruled its decision in *Molloy* v. *John Hancock Mut. Ins. Co.,* 327 Mass. 181 (1951), and allowed recovery by the beneficiary. [607-608]

CONTRACT. Writ in the Superior Court dated February 21, 1973.

The action was heard by *Connolly,* J., on a statement of agreed facts.

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*C. A. Peairs (James S. Fleming* with him) for the plaintiff.

*Philip L. Berkeley* for the defendant.

BRAUCHER, J. "Decisions of this court have established the proposition that public policy forbids even an innocent beneficiary of a policy of life insurance to recover on the policy where the death of the insured is the result of his own criminal conduct." *Molloy* v. *John Hancock Mut. Life Ins. Co.,* 327 Mass. 181, 182 (1951). In deference to the weight of modern authority in other jurisdictions, we now disestablish that proposition. The result is that the plaintiff recovers the ordinary benefit under a straight life insurance policy, but, by reason of an exclusion clause in the policy, does not recover double indemnity for death caused by accidental means.

The action was begun in the Superior Court, transferred for trial to a District Court, retransferred to the Superior Court after trial, and submitted on a statement of agreed facts. The plaintiff seeks to recover $10,000 on a policy of whole or straight life insurance on the life of her son, and also seeks double indemnity for death caused by accidental means. It is agreed that the policy was issued March 25, 1969, that the insured was shot and killed by a police officer on October 20, 1972, that at the

time of his death the insured was committing two grave
and serious felonies, assault by means of a dangerous
weapon (a gun) and attempt to murder, and that his
death was caused by and resulted from his own criminal
conduct. Judgment was rendered for the defendant, and
the plaintiff appealed. We transferred the case to this
court on our own motion.

1. *Interpretation of the policy.* The policy in suit was
not included in the record submitted to us, but we re-
quested that copies be furnished, and this has been done.
In accordance with G. L. c. 175, § 132 (2), inserted by
St. 1907, c. 576, § 75, and subsequently amended, the
policy provides that it shall be incontestable after it has
been in force during the lifetime of the insured for a period
of two years from its date of issue, except for nonpayment
of premiums and except as to provisions and conditions,
if any, relating to total and permanent disability benefits
or additional benefits granted specifically in case of death
caused by certain bodily injuries sustained through acci-
dental means. A separate clause limits the amount payable
to premiums paid if the insured dies by his own hand or
act, whether sane or insane, while the policy is in force
and within two years of the date of issue. There is a pro-
vision for waiver of premiums in the event of permanent
and total disability, with an exception for wilfully and in-
tentionally self-inflicted injury, while sane or insane. The
only other provisions as to violation of law by the insured
exclude the additional benefit for death caused by acci-
dental means "if such death results, directly or indirectly,
or wholly or partially" from suicide or attempt thereat,
while sane or insane, " (iv) from committing an assault or
a felony," or from participation in a riot or insurrection.

These provisions are to be read in light of G. L. c. 175,
§ 121, forbidding the insurer to "make any contract of life
...insurance...or any agreement as to such contract
other than as plainly expressed in the policy issued
thereon"; and in light of the policy provision required by
G. L. c. 175, § 132, cl. 3: "This policy and the application
therefor, copy of which is attached hereto and made a part

hereof, constitute the entire contract between the parties hereto."

We think the policy, so read, unambiguously negates any implied exception for violation of law by the insured, other than the suicide clause and the exclusions noted as to waiver of premiums and as to double indemnity for death caused by accidental means. Apart from the question of public policy discussed below, therefore, the plaintiff should recover the face amount of the policy, but the judge correctly ruled that the benefit for death caused by accidental means is barred by the exclusion clause. *Lubianez* v. *Metropolitan Life Ins. Co.*, 323 Mass. 16, 20 (1948). We therefore need not consider whether the additional benefit is also barred because the insured's death was not incurred by "accidental means," as was held in *DeMello* v. *John Hancock Mut. Life Ins. Co.*, 281 Mass. 190, 196 (1932). Accord, *Rousseau* v. *Metropolitan Life Ins. Co.*, 299 Mass. 91, 92 (1937). The cases cited indicate that the same result would be reached on grounds of public policy even if no exception in the policy were applicable. See R. Keeton, Insurance Law § 5.4 (f) (1971).

2. *Public policy.* We do not reexamine the public policy issue as it affects double indemnity for death by accidental means. Denial of recovery on an ordinary policy of life insurance stands on a different footing, however. Such policies involve, to a significant extent, features of savings and investment as well as purely insurance features. See R. Keeton, Insurance Law § 1.3 (e) (1971). Forfeiture of savings and investment to the insurer may deter crime, but it seems out of harmony with related policies in modern times. The public policy issue cannot be resolved by literal application of the maxim that no man shall profit from his own wrong, or by logical deduction from that maxim. Cf. *Minasian* v. *Aetna Life Ins. Co.*, 295 Mass. 1, 5 (1936).

We therefore examine the history of the public policy asserted here. Our first case on the point, *Lord* v. *Dall,* 12 Mass. 115, 120 (1815), involved an insured who died on the coast of Africa while engaged in the slave trade. The case might perhaps have been decided on a question of

causation, but it was not. The plaintiff was the beneficiary, the insured's sister, and as to the illegality of the enterprise the court said, "It is a sufficient answer to this objection, that, whatever the law may be as to an insurance upon an illicit voyage, between the parties to the contract, the present plaintiff, being ignorant of any intended violation of the law, ought not to be affected by such illegality." The next case, *Cluff* v. *Mutual Benefit Life Ins. Co.*, 13 Allen 308, 309 (1866), *S.C.* 99 Mass. 317, 333 (1868), involved a policy which was to be void if the insured should die "in the known violation of any law of these states." He died in an attempt to seize the property of another; on the fourth trial it was left to the jury whether he had a felonious intent, and this court upheld a jury verdict for the beneficiary.

The proposition here in issue stems from the decision in *Hatch* v. *Mutual Life Ins. Co.*, 120 Mass. 550, 551 (1876). There a life insurance policy on the beneficiary's wife provided that it would be void if the insured died "by her own act, or hand, whether sane or insane, or in, or in consequence of, a duel, or of the violation of the laws of any nation, state or province." The insured died in consequence of a voluntary illegal abortion. The court denied recovery as contrary to public policy, and did not pass on the effect of the quoted clause.

In the *Hatch* case the court cited *Amicable Soc'y for a Perpetual Life Assurance Office* v. *Bolland*, 4 Bligh (n.s.) 194, 211 (1830), where the insured was executed for a felony and the House of Lords denied recovery as contrary to public policy. In that case counsel for the insurer relied in part on the insured's attainder by the judgment which preceded his execution. *Id.* at 208-209. Both the *Hatch* case and the *Bolland* case were relied on in *Ritter* v. *Mutual Life Ins. Co.*, 169 U.S. 139, 157-160 (1898), denying recovery in a case of suicide by a sane insured. The same cases were also relied on in *Burt* v. *Union Cent. Life Ins. Co.*, 187 U.S. 362, 364-366 (1902), where the insured was executed for murder.

We cited the same cases in *Reagan* v. *Union Mut. Life Ins. Co.,* 189 Mass. 555, 558 (1905), in holding against public policy a clause making the policy incontestable (for fraud) from date of issue, and we adhered to that decision in *New York Life Ins. Co.* v. *Hardison,* 199 Mass. 190, 195 (1908), after the 1907 statute required a provision for incontestability after two years. We also followed the *Ritter* case on suicide in *Davis* v. *Supreme Council of Royal Arcanum,* 195 Mass. 402, 407 (1907); we relied on the same line of cases in the decisions on death by accidental means, cited above; and in *Millen* v. *John Hancock Mut. Life Ins. Co.,* 300 Mass. 83, 85 (1938), we followed the *Bolland* and *Burt* cases as to death by execution for murder. Finally, in *Molloy* v. *John Hancock Mut. Life Ins. Co.,* 327 Mass. 181, 182 (1951), we denied recovery on an ordinary life insurance policy in a case much like the present one.

Meanwhile, however, much had changed. Insurance policies came to provide for many contingencies once left to judicial decision, and statutory regulation reinforced the certainty and security that insurance money would be paid rather than contested. Policies and statutes provided for incontestability and for cash surrender values. The *Ritter* case on suicide was repudiated in the Supreme Court and elsewhere. *Northwestern Mut. Life Ins. Co.* v. *Johnson,* 254 U.S. 96, 100-101 (1920). See W. Vance, Insurance § 94 (3d ed. 1951). In *Slocum* v. *Metropolitan Life Ins. Co.,* 245 Mass. 565, 570 (1923), a case of murder of the insured by the beneficiary, we held that the insurer could not keep the money even though the beneficiary was barred from collecting it. See *Estate of Draper* v. *Commissioner,* 536 F.2d 944, 947 (1st Cir. 1976). In the three cases in this court on death by accidental means, cited above, the insurer contested only the additional benefit, not its liability for the face amount of the ordinary life insurance policy. The great weight of authority in other jurisdictions is opposed to denial of recovery on a straight life insurance policy on grounds of public policy

in a case like the present one. See Annot., 43 A.L.R.3d 1120, 1126-1127 (1972); W. Vance, Insurance § 190 (3d ed. 1951); 1A J.A. Appleman, Insurance Law and Practice § 511 (1965); McGovern, Homicide and Succession to Property, 68 Mich. L. Rev. 65, 80 (1969). We therefore overrule the *Molloy* case. We are reinforced in this course by the indications in the policy that the insurer did not rely on our decisions in preparing it.

3. *Disposition.* The judgment is reversed. Judgment is to be entered for the plaintiff on her claim for the face amount of the policy, and for the defendant on the plaintiff's claim for death caused by accidental means.

*So ordered.*