Larkin, J.
Defendant insurance company appeals from a finding by the District Court that its actions relative to the plaintiff assured constituted unfair and deceptive practices within the purview of G.L. c. 176D and 93A. Upon a consideration of the total facts of record, we agree with the defendant.
The record shows that the operative facts are essentially undisputed. The plaintiff, Christopher Record, was the owner of a 1975 Jeep, “Model CJ5”, which was insured by the defendant, Aetna Life & Casualty, pursuant to coverage afforded by a Massachusetts Automobile Insurance Policy to include coverage for collision as provided by Part 8 of said policy.[1] On or about March 30, 1980, the plaintiff was involved in an accident whereby “considerable” damage *272 was caused to his motor vehicle. Following the accident, the vehicle was taken to Petrin Motors in Greenfield, Massachusetts for storage and was inspected by the defendant’s appraiser and declared a total loss. On or about April 10,1980, the plaintiff was contacted by a claims representative of the defendant and, following a conference, agreed to a settlement of the claim for a total sum of $2,425 (actual cash value of $2,500, plus 5% sales tax, less $200 deductible) if he did not wish to keep his damaged vehicle. In the alternative, in the event that the plaintiff elected to keep his damaged vehicle, the defendant advised him that the high salvage bid received from Bemardston Auto Wrecking (a local auto salvage firm) in the amount of $1,001 would be deducted from the settlement offer of $2,425. The plaintiff chose not to keep his vehicle and on or about April 24,1980, defendant forwarded a check in the amount of $2,425 made payable to the plaintiff and First National Bank of Amherst, the lienholder of record.
The bank was also requested to forward to the defendant the plaintiff’s Certificate of title to the vehicle in question. The defendant authorized Ber-nardston Auto Wrecking to remove the damaged vehicle from Petrin Motors and transport it to the Bemardston’s lot.
While the vehicle was on the premises of Bemardston and after Bemardston had performed some restorative work on the vehicle, the plaintiff, on or about April 26,1980, unlawfully entered the premises and caused further damage to the vehicle. The Bemardston police apprehended the plaintiff while on the premises of Bemardston Auto Wrecking and subsequently charged the plaintiff with (1) willful and wanton destruction of personal property over $100, (2) attempted larceny and"(3) trespass. The defendant was informed of the incident and the criminal complaints which had issued and immediately stopped payment on the' check in the amount of $2,425 which had been forwarded to the First National Bank of Amherst. At the conclusion of a criminal hearing in the Greenfield District Court on May 27, 1980, the plaintiff was found guilty of trespass but was found not guilty on the remaining complaints on the basis that the plaintiff was the owner of said motor vehicle at the time of the incident on April 26,1980, since the certificate of title was in his name at that time.
Following the hearing, and on or about June 11,1980, the defendant informed the plaintiff that because of the damages which he had caused to the motor vehicle while it was on the premises of Bemardston Auto Wrecking, that Bemardston Auto Wrecking no longer wanted the vehicle for salvage. The defendant further informed the plaintiff that in view of these developments, it intended to deduct the salvage válue of the vehicle ($1,001) from the previous settlement offer ($2,425) and issue him a check in the amount of $1,424. Thereafter a check in that amount was forwarded to the First National Bank of Amherst made payable, again, to thé bank (as lienholder) and the plaintiff. The plaintiff proceeded to endorse this check which was then negotiated. Contemporaneously, the plaintiff was also informed, in writing, on or about June 11, 1980, that, again, in light of the developments adverted to above, it would be his. own responsibility to dispose of his damaged motor vehicle.[2]
Following these events, the plaintiff commenced an action in the District Court pursuant to the provisions of G.L.c. 93A. Specifically, plaintiff’s complaint asserted putative violations of G.L.c. 176D.[3]
*273 The answer of the defendant denied that its action relative to the plaintiff constituted a violation of G.L.c. 176D and 93 A. It raised a number of affirmative defenses including, of special relevance here, that the plaintiff’s receipt and acceptance from the defendant of a payment (the plaintiff’s endorsing and cashing of the defendant’s check for the lesser amount) amounted to an accord and satisfaction of the claim.
At the close of the trial, the defendant filed a total of thirty three separate requests for rulings.[4] The trial judge dealt with each of them and, in addition, made the following “findings of fact,” set forth in their entirety in the margin.[5]
In this Court, defendant challenges as cieariy erroneous me wiuiug uy me trial judge that its actions relative to the plaintiff assured constituted unfair and deceptive practices.
In this regard, Rule 52, M.R.C.P. declares that a trial judge’s finding of fact will not be set aside unless “clearly erroneous.” Thus, although such issues as credibility of witnesses and weight to be accorded the evidence are for the trial judge, where the essential facts are not disputed, the Appellate Division has the power to draw its own inferences on ultimate issues from the totality of subsidiary facts as found. See, e.g., McGowan v. Quincy Mutual Fire Insurance Co., 4 Mass. App. Ct. 813 (1976). A factual finding is clearly erroneous when it is against the clear weight of the evidence or when the reviewing court is left with a definite and firm conviction that a mistake has been committed. See Reporters’ Notes, M.R.C.P., Smith and Zobel, 8 Mass. Practice 246-247.
In this case, we are left with a definite and firm conviction that a mistake has been committed. It seems to us that the defendant company, far from engaging in unfair and deceptive acts, was, indeed, the victim of, at least, attempted unfair and deceptive acts on the part of the plaintiff. The record makes clear that after the company had swiftly and in good faith agreed with the plaintiff to settle his claim at a presumably mutually satisfactory, fair, and reasonable figure, the plaintiff, thereafter, set forth on the peccadillo recounted above. It seems obvious that this adventure was undertaken either to harm the vehicle further, for purely vindictive reasons or, more likely, to remove from it certain equipment which plaintiff, perhaps, believed that he could either use in the future on his next vehicle or dispose of privately for a profit.
*274 At all events, whatever his motivation or purpose, the fact remains that the plaintiff, while engaged in an illicit course of conduct, so adversely impacted the vehicle that the auto salvage company where the auto was reposing, which had agreed to give the defendant company a substantial amount for its salvage value, no longer wanted anything to do with the car. Under these circumstances, it seems clear that the plaintiff volitionally, and without right, violated the prior negotiated settlement contract. In so doing, plaintiff, again at a minimum, failed to comport with either the letter or spirit of two policy mandated provisions of the insurance contract: (a) that an assured must “cooperate” with the company (see, paragraph 25 of the Standard Policy) and (b) that an assured will do “whatever is reasonble to protect the automobile from further damage or loss.” (see paragraph 25 of the Standard Policy).
Under these circumstances, it is difficult to understand how the defendant insurance company can be found liable for “unfair and deceptive practices” on the presumed basis of a failure to comport with a prior settlement agreement which was abrogated in diverse ways by the aberrational, if not venal, acts of the plaintiff. Again, it seems to us that any duplicity or “sharp practice” in this case should be imputed to the plaintiff rather than to the defendant. In short, we see no unfair or deceptive practice on the part of the company of this record.
Indeed, all of the foregoing, at least implicitly, seems to have been recognized by the trial judge, who in dealing with the following requests for rulings by the defendant company allowed each of the specified requests:
13. The evidence warrants a finding that the plaintiff did not perform all the conditions required of him under the contract entered into with the defendant.
[[Image here]]
16. The insurance policy which is the subject of this litigation requires that the plaintiff insured do whatever is reasonable to protect the automobile from further damage or loss.
[[Image here]]
17. The evidence warrants a finding that the plaintiff failed to protect his automobile from further damage or loss.
[[Image here]]
28. The evidence warrants a finding that the defendant’s action in placing a stop payment on the initial payment was justified by the plaintiff s willful actions in causing further damage to his motor vehicle.
[[Image here]]
29. The evidence warrants a finding that the check issued by the defendant in the amount of $1,424, after the plaintiff had willfully caused further damage to his motor vehicle, constituted a fair and just payment.
To be sure, the trial judge, in traditional and accepted practice, followed the allowance of each request with the caveat - “see finding of fact.” However, notwithstanding the engrafting of this verbiage, the cumulative thrust of the allowance of each of these requests, in the absence of affirmatively found countervailing facts which we deem absent, is to indicate that there was adduced at the trial at least some evidence to support the proferred propositions (although, obviously, with the imposition of the “ see finding of fact” legend, it was not required that the trial judge adopt the request as an ultimate finding in the case).
However, in reading the Court’s separate and independent “findings of fact,” *275 set forth in their entirety, supra, there appears little if anything to mitigate or contradict the cumulative thrust of the allowance of each of the above-cited individual requests; each, again, singly and collectively, supportive of the legitimacy and rationality of the company’s position, after being apprised of the plaintiffs actions in illicitly damaging the subject vehicle after a settlement had been reached by the parties.
With the record in this posture, there is at least a surface plausibility to the defendant’s argument here that there exists, on the one hand, a seeming inconsistency between the trial court’s ultimate finding of unfair and deceptive acts on the part of the company and, on the other, the tacit agreement with the legitimacy of the company ’ s position inherent in the allowance of the generality of the defendant’s individual requests for rulings. However, on this record, we need not invoke this putative inconsistency because we believe there is a further facet to this case which is fatal to the plaintiffs case and which renders the ultimate finding of the trial court clearly erroneous.
It is undisputed that after the defendant company became aware of the plaintiffs activities in unlawfully damaging the vehicle, with the resultant declination of the salvage company to have anything further to do with the vehicle, the company forwarded to the plaintiff a check for the reduced amount. The company also apprised the defendant that because the salvage company no longer wanted the vehicle for salvage that it intended to deduct the salvage value of the vehicle from the previous settlement offer ($2,425) and issue a new and lesser check in the sum of $1,424. In short, the plaintiff was fully apprised in the premises of the company’s intended course of action relative to the amount of the payment that he would be receiving from the company in the light of the plaintiff-induced developments which had transpired subsequent to their negotiation of the previous (and higher) settlement agreement. In furtherance of these intentions, the company forwarded a check, for the lesser amount, to the plaintiff (though the lienholder and co-payee - the First National Bank of Amherst). Again, fully informed in the premises, the plaintiff proceeded to endorse this check and it was thereafter negotiated.
Taking note of this evidence, the defendant company, at the close of trial and before final argument, made the following request for ruling:
The evidence warrants a finding that the acceptance, endorsement and negotiation of the check in the amount of $1,424 constituted an accord and satisfaction and this operated a complete discharge of the plaintiff s claim.
This request was allowed by the trial judge with the usual advertence to the separate findings of fact. However, in the findings of fact (see above) there was no finding which contradicted, either directly or impliedly, the preferred proposition that the acceptance and endorsement of the check in the lesser amount did indeed constitute a liability extinguishing accord and satisfaction.
With the record in this posture, we believe that a recent decision of the Court of Appeals is decisively determinative against the position of the plaintiff and the result reached by the District Court. In Wong v. Paisner, 14 Mass. App. Ct. 901 (decided June 25, 1982), the Court ruled that “It is settled that acceptance and deposit of a check offered in full payment of a disputed claim (constitutes) an accord and satisfaction and bars an attempt to collect any balance outstanding under a contract.” See also Worcester Color Co. v. Henry Wood’s Sons, 209 Mass. 105, 109 (1911); and Whittaker Chain Tread Co. v. Standard Auto Supply Co. 216 Mass. 204, 206 (1913). We realize that whether an accord and satisfaction has been proved is a question of fact on which the defendant has the burden of proof. *276 See, e.g., Rosenblatt v. Holstein Rubber Co., 281 Mass. 197, 300 (1933). However, here, where the amount of the check was obviously “disputed,” in view of the company’s action following the plaintiffs unlawful course of conduct, the acceptance and deposit by the plaintiff with full knowledge of the dispute as to the appropriate amount of the settlement, in our view, brings the case within both the result and rationale of Wong v. Paisner, supra. Accordingly, we find and conclude that the judgment of the District Court is not supported by substantial evidence and, accordingly must be set aside. On this record, a judgment should enter for the defendant. It is so ordered.

 Part 8 of the policy provided in pertinent part:
‘ ‘ Under this Part, we will pay for any direct and accidental damage to your auto caused by a collision. It does not matter who is at fault. We will also pay for collision damage to other private passenger autos while being used by you or a household member with the consent of the owner. However, we will not pay for damage to any auto which is owned or regularly used by you or a household member unless a premium for this Part is shown for that auto on the Coverage Selections page.
“We will pay for each loss up to the actual cash value of the auto at the time of the collision, but in all cases we will subtract the deductible amount you selected. Unless you selected a different amount, the law sets your deductible at $200. Your deductible is shown on the Coverage Selections page.
“After a collision, you must allow us to have the auto appraised. If you have your auto repaired in accordance with the appraisal, you must then send usa Completed Work Claim Form. We must pay you within 7 day s after receiving the form. If you request us to, we will pay the repair shop directly. We have the right to inspect all repairs.
“But, if you choose not to have your auto repaired, or if we do not receive your Completed Work Claim Form, we will determine the amount of the decrease in the actual cash value of your auto and pay you that amount less your deductible. We will never pay more than what it would cost to repair the damage or replace the damaged property. Our payment automatically reduces the actual cash value of your auto if you have further claims. If you later give us proof of proper repair, the actual cash value will be increased.
“If we fail to pay you within 7 days after receipt of the Completed Work Claim Form, you have the right to sue us. If a court decides that we were unreasonable in refusing to pay you on time, you are entitled to double the amount of damage plus costs and reasonable attorney’s fees.
“If we pay for the total loss of your auto, we will suspend the Collision coverage for your damaged auto until your auto passes Motor Vehicle Safety Inspection Test.
“Camper bodies are not covered under this Part unless specifically shown on the Coverage Selections page or by endorsement. An additional premium will be charged for insuring a camper body. If someone covered under this Part is using an auto he or she does not own at the time of the accident, the owner’s auto insurance must pay its limit before we pay. Then, we will pay, up to the limit shown on your Coverage Selections page, for any damage not covered by that insurance.”

 The record shows that, to date, the plaintiff still retains possession of the certificate of title for his vehicle. The defendant did not receive any payment from Bemardson Auto Wrecking for the salvage value of the vehicle.

 Paragraph 11 of plaintiffs complaint recited the following: “Massachusetts General Law, Chapter 176D states: ‘The following are hereby defined as unfair method of competition and unfair or deceptive acts or practices in business of insurance: Unfair claim settlement practices: an unfairclaim settlement practice shall consiust of any of the following acts or omissions:
*273 practice shall consist of any of the following acts or omissions:
(f) Failing to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear.
(g) Compelling insurred (sic) to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in action brought by such insured.’”

It seems to us that this number of requests might have invited a motion to strike as “excessive" in the context of the case.

“I find that the jplaintiff and defendant reached an agreement on or about April 10, 1980 for a settlement of the plaintiff’s claim to accept $2,425.00 for the total loss incurred and that the defendant and plaintiff agreed that the insurer defendant would take title to said vehicle under the terms of the policy. I further find that the defendant disposed of the vehicle to Bemardston Auto Wrecking for $1,001.00 and that Bemardston Auto Wrecking took possession of said vehicle and did perform some work on the vehicle. I further find that as a result of the actions by the plaintiff the defendant insurer stopped payment on the first check in the amount of $2,425 after being informed of plaintiff’s damaging the vehicle on the premises of Bemardston Auto Wrecking, and that Bemardston Auto Wrecking was no longer interested in buying said vehicle. I further find that Bemardston Auto Wrecking put the vehicle back into the same condition that it was when it was received by them and has had the vehicle to the present time. I find that the insurer after being informed that the plaintiff had further damaged the vehicle stopped payment on the check in the amount of $2,425.00 and further that it infonned the plaintiff that it no longer would take the vehicle under the policy and was deducting the salvage value of $1,000.00 from the agreed settlement and issued a check for $1,425.1 further find that the defendant endorsed and accepted the $1,425 check and paid it over the First National Bank of Amherst. I further find that the breach of insurance settlement agreement and causing the plaintiff to bring suit are unfair and deceptive practices and further that it was not a willful and knowing violation.”